UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division

2d Lt. JOHN L. BURTON, in behalf of
himself and other and any veterans
similarly situated,

    Plaintiff (s)

-vs-

Case No. 8:25cv428-TPB-AEP
Request or Jury Trial
Motion for TRO pursuant to Rule 65 FRCP
Motion for Class Certification per Rule 23
Motion for Recruitment of Counsel §1915

Doug Collins, Secretary, Department of Veteran Affairs;
Dr. Ryan Burri, Oncologist, VA Hospital Bay Pines;
Dr. Tora Roca, Oncologist, Moffitt Cancer Center;
Dr. Yu, Oncologist, Moffitt Cancer Center; Dr.
Daniel Fernandez, Oncologist, Moffitt Cancer Center;
Dr. Green, VA Hospital, Tampa; Dr. Pearlman
VA Hospital, Tampa,

FEB 20 2025 PM 1:16
FILED - USDC - FLMD - TPA

    Defendants et al.

_____/

## EMERGENCY COMPLAINT

1. Plaintiff, 2d Lt. John L. Burton, a 70 Afro-American back male, who currently has prostate cancer, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, 42 U.S.C. 1983, and seeks TRO enjoining the defendants from denying plaintiff needed emergency proton prostate cancer treatment pursuant to Rule 65 Fed. R. Civ. P., compensatory damages arising from Defendant United States of America's (hereinafter "Defendant") negligence in failing to adhere to the prevailing professional standard of care which is generally recognized as acceptable and appropriate by reasonably prudent similar health care providers.

2. In line with *Smith v. United States*, Case No. 20-11365 (11th Cir. 2021) the Veteran Administration (hereafter 'VA '), is breaching their legal duty to exercise ordinary medical care and negligently failed to diagnose his prostate cancer and immediately treat it.

1

8 405
TPA 71795



3.     Tens of quadruple studies recognize that racial disparities portend who gets proton therapy and who does not. See <u>American Cancer Society</u> Studies Show Increase in Proton Therapy But Racial Disparities; Maryland Proton Treatment Center Proactively Addresses Health Equity, by Maryland Proton Treatment Center, May 5, 2022 (Two new studies lead by American Cancer Society (ACS) researchers show an increase in the use of proton beam therapy (PBT) for patients with cancer in the U.S. during the past decade), of the nearly six million patients analyzed, the use of PBT increased overall from 0.4% in 2002 to 1.2% in 2018. However, black patients were less likely to receive PBT than white patients, and this racial disparity increased over time. The studies were recently published in JAMA Network Open, Dr. Leticia Nogueira; Black Patients Less Likely to Receive Targeted Radiation, **Study finds racial disparities in the use of proton beam therapy, a focused treatment that can reduce side effects, by Carolyn Bernhardt, September 20, 2022;** JAMA Netw Open. 2022 Apr 1;5(4):e228970. doi: 10.1001/jamanetworkopen.2022.8970.**Association of Race With Receipt of Proton Beam Therapy for Patients With Newly Diagnosed Cancer in the US, 2004-2018, by doctors** <u>Leticia M Nogueira</u>  <u>Helmneh M Sineshaw</u>, <u>Ahmedin Jemal</u>, <u>Craig E Pollack</u>, <u>Jason A Efstathiou</u>, <u>K Robin Yabroff</u> ;The State of Cancer Disparities in the United States First ACS report (2021) on racial/ethnic and socioeconomic disparities in cancer occurrence, programs that target cancer disparities, and policy recommendations. The Challenge: Over the past several decades, there has been progress in cancer prevention, early detection, and treatment in the United States. And that's lead to overall declines in cancer death rates. Yet, people of color, with lower socioeconomic status, and living in rural areas have not benefited equitably from these advances. The reason is racism and discrimination along with other social determinants of health that lead to both social inequities and discriminatory policies. Together, they are significant root causes of health

disparities. These disparities in cancer outcomes based on race, income, and geography will likely widen without attention from health policymakers and health care providers.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States of America and is premised on the acts and omissions of the Defendant acting under color of federal law.

5.     This Court further has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b) in that this is a claim against the Defendant United States of America, State of Florida, for money damages, accruing on or after January 1, 2025, for personal injury caused by the negligent and wrongful acts and omissions of employees of the Government while acting within the course and scope of their office or employment, under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff.

6.     Jurisdiction founded upon the federal law is proper in that this action is premised upon federal causes of action under the Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. § 2671, et. seq.

7.     Pursuant to the FTCA, 28 U.S.C. § 2671, et. seq., the Plaintiff on or about July 6, 2010, Plaintiff presented his claim to the appropriate federal agency for administrative settlement under the FTCA requesting $1,000,000.00 or more.

8.     By letter dated December 21, 2024, Plaintiff's claim was finally denied in writing by the and such denial was sent by certified or registered mail to the Plaintiff. (Claim #).

9.     This lawsuit was then timely filed.

10.    This action is timely pursuant to 28 U.S.C. § 2401(b) in that it was presented to the appropriate federal agency within two years of accrual and this action was filed within six months of receipt of the certified letter sent by the federal agency denying the claim.

11. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), as Defendant does business in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

12. Plaintiff, John L. Burton (or 2d Lt Burton) is an Afro- American citizen, and a Honorable Discharged Vietnam Veteran an agency of the Defendant, and currently resides at 540 71st Avenue North, St. Petersburg Beach, FL 33706.

13. Other parties are located at the VA Medical Hospital Bay Pines Florida; VA Medical Center, Tampa Florida; and/ or Moffitt Cancer Center, Tampa Florida.

14. Defendants, Veteran Administration is an agent of United States of America, is subject to suit for personal injury caused by the negligent and wrongful acts and omissions of employees of the Government while acting within the course and scope of their office or employment, under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff, pursuant to the FTCA.

15. Defendants Moffitt Cancer Center is an agent of Florida, is subject to suit for personal injury caused by the negligent and wrongful acts and omissions of employees of the State while acting within the course and scope of their office or employment, under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff, pursuant to the 42 U.S.C. §§1983.

16. At all times material to this action, Defendant was responsible for the correct and prompt response to the health care needs of 2d Lt. Burton as explained in

17. At all times material to this action, 2d Lt. Burton was a citizen subject to the care and professionalism of the Defendants and subject to the care and treatment of the Defendant for any and all medical evaluation and treatment of his prostate cancer.

18. At all times material to this action, if 2d Lt. Burton required medical evaluation or treatment, his only avenue was to rely on the medical evaluation and treatment provided by the defendants.

## STATEMENT OF CLAIM

19. 2d Lt. Burton is a twice Honorable Discharged Vietnam veteran. 2d Lt. U.S. Army, Airedale U.S. Navy.

20. 2d Lt. Burton came into the Veteran Hospital on the date of September 2020.

21. On or about June 17, 2020, Lt. Burton arrived at the Emergency Room VA Bay Pines and was transferred to the CLC Unit after medical officials explained that he had had a stroke.

22. On or about October 5, 2020 Lt. Burton was released from CLC and released home.

23. About a year and a half later he caught prostate cancer which originated from his Naval job experiences from the overuse of contaminated water and/or Agent Orange while serving enlistment (stationed) at the Naval Air Station, Cecil Field, Jacksonville. Florida (October 30, 1973 to September 12, 1975); or his free world employment at the Naval Air Station, Pensacola, Florida as a jet mechanic (1982); and/or his free world employment as a corrosion control supervisor at the Nellis Air Force Base, Las Vegas, Nevada (1987).

24. It is reported to me that on the date of February 2, 2024 based upon a Bay Pines biopsy report, it was reported on about that day 2d Lt. Burton had prostate cancer.

25.  Immediately upon receiving his cancer prognosis, Mr. Burton sought treatment.

26.  He first sought treatment at the University of Florida Proton Institute.

27.  Proton beam therapy for prostate cancer is a **noninvasive external radiation treatment** that targets and destroys cancer cells by disrupting their DNA.

28.  Proton therapy can precisely target prostate tumors, while better sparing surrounding tissues and organs from radiation exposure.

29.  On or about the date of October 20, 2024, he contacted Steven the University of Florida Proton Institute (a distinguished military veteran) who represents veterans, and was told by him that I was not eligible to receive proton therapy at UF without payment of cost over $300, 000.

30.  The VA using cost as a reason to not provide me proton treatment for the prostate cancer I now have because I am black.

31.  Research shows that Black men are **70 percent more likely to develop prostate cancer** compared to other racial groups and are twice as likely to die from it.

32.  Understanding the reasons behind this disparity involves looking at both socioeconomic factors and genetic predispositions.

33.  The VA is openly displaying racism toward black veterans who have contacted prostate cancer.

34.  The VA does in fact pays for proton therapy for cancer treatment such as cancer of the eyes, brains, etc., but not prostate. Exhibit A

35.  I was told that the UF has successfully treated more than 3000 patients for prostate cancer with over a 98% successful cure rate but none of the VA doctors will order the VA Community Care to pay the expense for me to go there. See Exhibit B.[1]

36.  The VA would pay for measure for me to receive treatment at UF if I participated in a clinical trial at UF for prostate cancer of which it does not offer I'm told.

37.  The only way I could receive proton therapy in the VA was that I have to first enroll in a clinical trial offered by another University such as at Emory University, Atlanta, Georgia.

38.  So, my plan is to enroll in the Emory University proton trial because they have the clinical trial would allow me to receive proton treatment at Emory.

39.  However, when I contacted Dr. Green (whom I'm supposing is the spokesperson for Dr. Pearlman), she told me that Dr. Pearlman it would have to be him to make that call for me to enroll in their proton therapy treatment program.at Emory.

40.  Last week Dr. Danial Fernandez told me that "we need to do another biopsy to determine if you have further cancer since the VA never fulfilled its job to take a MRI of your whole prostate and we want to make sure we cover the whole prostate." "There may be excessive bleeding in your rectum after we put you to sleep but we will provide you pain pills if you awake!"

---

[1] I personally got in the car and drove from St. Pete Beach to Jacksonville to the University of Florida Proton Center in Jacksonville, two weeks ago and conferred with Ms. Ward and Steven of the UF. And, I was told by the both of them that Emory University in Atlanta has a proton therapy "clinical trial" in which I could enroll to receive proton treatment conterminously. The problem is Dr. Peralman of the VA Tampa through collusion with Dr. Burri of VA Bay Pines through won't communicate with Emory officials to facilitate my transfer there to receive due care - - because I'm black?

41. The defendants would aver that the plaintiff can accept the photon treatment the VA currently issues.

42. But the plaintiff is a 70-year-old black man who has already had a life-threatening stroke a few years ago, photon or conventional treatment would endanger his life, whereas proton beam would alleviate harsher life-threatening radiation.[2]

43. It's clear to me that such incompetent treatment accorded me because of racism.

## ARGUMENT

44. Several Florida federal courts in the United States have successfully ruled that proton therapy is medically necessary for treatment of prostate cancer. See Aetna patients receive a $3.4 million settlement for proton therapy. APRIL 12, 2023.

45. The insurer, which argued that the treatment was experimental and investigational, failed to justify how proton therapy did not align with its definition of what is "medically necessary," according to Judge Kenneth Marra of the U.S. District Court for the Southern District of Florida on Thursday. Marra ruled partially in favor of plaintiffs Sharon Prolow and Mark Lemmerman, who both sought coverage for proton beam radiation therapy for non-metastatic breast and prostate cancer, respectively. (Case No. unknown).

---

[2] Proton therapy precisely targets even the most difficult to treat and reach tumors and allows higher doses of radiation to be delivered to the **prostate** with fewer side effects than non-proton therapy. One of the most significant advantages of proton therapy is its ability to minimize side effects commonly associated with radiation treatment. Traditional X-ray therapy can lead to a range of complications, including urinary incontinence, erectile dysfunction, and bowel problems. Studies have shown that patients receiving proton therapy tend to report fewer and less severe side effects, enhancing their quality of life during and after treatment.

46. I spoke with attorney Stephanie Casey Esq. last week and she's very knowledgeable on class actions regarding my situation and she willing to represent me given all that I informed her. See A federal judge in Florida denied United Healthcare's motion to dismiss a lawsuit brought by a cancer patient seeking coverage for proton beam radiation therapy to treat his tongue cancer.

47. The patient, Carlos Morera, alleges the insurer wrongfully denied benefits under his healthcare plan, forcing him to pay approximately $195,000 out of pocket for the treatment. Stephanie A. Casey, a partner at Colson Hicks Eidson, of Miami, Florida, represents Morera and successfully argued that the case should proceed.

48. "We look forward to presenting the merits of this case at trial. Proton beam radiation therapy has long been recognized as the standard of care for these types of cancers," she said. (Again, Case No unknown).

49. There seems to a conflict between VA article Title Radiation Oncology Therapy, Authority 38 CFR 17.270(a) and VHA Office of Integrated Veteran Care- - Proton Beam Therapy, See Exhibit C.

50. The VA benefit of the doubt rule thus must be resolved in favor of the veteran. 38 U.S.C. § 5107(b); *Bufkin v. McDonough*, No. 23-713 U.S. (2024)

51. According to my read of VA article Title Radiation Oncology Therapy, it states that I **am** entitled to proton treatment,[3] and therefore conflicts with the VHA[4] ruling which states that proton therapy for prostate cancer treatment is **not** medically necessary.

52. Any delay to the proton procedure is a imminent threat to plaintiff life.

## DAMAGES

53. 2d Lt. Burton seeks compensatory damages for current pain and suffering five (5) million dollars;

54. 2d Lt. Burton seeks compensatory damages for current racial discrimination five (5) million dollars;

55. 2d Lt. Burton (s) seeks punitive damages for all current pain and suffering five (5) million dollars;

56. 2d Lt. Burton seeks recruitment of class counsel to represent the class;

57. 2d Lt. Burton seeks a immediate TRO to enjoining defendants from denying him access to needed proton treatment

---

[3] See III (E)(5) (Proton beam radiosurgery/radiotherapy is covered for the following indications: Proton beam radiosurgery/radiotherapy are covered for other conditions when appropriate based on benefit policy, and when conventional radiotherapy is contraindicated: (the list is not all-inclusive) 5. Prostate cancer.

[4] The June 1, 2024 VHA rule reads as follows: I . Disclaimer. This documents currently in draft and is intended to be used as a reference for non-VA providers and not intend to replace clinical judgement when determining care pathways. These guidelines do not guarantee benefits or constitute medical advice…. For all conditions/indications not listed in section II.a. of this document, Proton Therapy is considered not medically necessary due to insufficient evidence of efficacy and safety. Conditions/indications for which PBT is not medically necessary include, but are not limited to, the following:

- Prostate adenocarcinoma

58. 2d Lt. Burton seeks an order immediately sending him to Emory Treatment Center Atlanta Georgia.

59. 2d Lt. Burton seeks any other order which the court deems necessary and just.

Respectfully submitted,

*John Burton*
2d Lt. John L. Burton
540 71st Ave. N.
St Petersburg Beach, FL 33766

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by U.S. Mail to the U.S. Attorney's Office (Headquarters), 400 North Tampa Street, Suite 3200, Tampa, FL 33602 ; Moffit Cancer Center 12902 USF Magnolia Drive, Tampa, FL 33612 this day the 20th of February 2025.